UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

TIMOTHY GREENLEE,

Plaintiff,

v.                                              CAUSE NO. 3:23CV788-PPS/JEM

CHRISTINA REAGLE, et al.,

Defendants.

OPINION AND ORDER

Timothy Greenlee, a prisoner without a lawyer, filed an amended complaint under 42 U.S.C. § 1983. (ECF 11.) Under 28 U.S.C. § 1915A, I must screen this pleading and dismiss it if it is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief. To proceed beyond the pleading stage, a complaint must contain sufficient factual matter to "state a claim that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Because Mr. Greenlee is proceeding without counsel, I must give his allegations liberal construction. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007).

Mr. Greenlee is currently incarcerated at Miami Correctional Facility ("MCF"). His original complaint was stricken because it raised unrelated claims against unrelated defendants. He was granted an opportunity to file an amended complaint containing

only related claims, and he responded with the present filing. He names nine defendants and describes a host of incidents occurring on various dates in 2023 at MCF.

He first claims that in March 2023, the Warden of MCF, Brian English, conspired with the Warden at Wabash Valley Correctional Facility ("WVCF"), where he was previously incarcerated, to "have me killed by transferring me from there to here." He claims MCF is one of the most violent and "gang-ridden" facilities within the Indiana Department of Correction. He claims that upon arriving at MCF, he was targeted by gang members, in part because his nephew had given testimony against a gang member years earlier. He asked Unit Team Manager Dwyer (first name unknown) for protective custody but was denied. He was later sent to restrictive housing due to a disciplinary infraction, and he claims an inmate there "poisoned my food by putting PCP" in it, with the assistance of Sergeant Heater (first name unknown). He claims he went "half-crazy" but never received medical attention.

On a date in May 2023, he claims Sergeant Mayes and Correctional Officer Trout (first names unknown) "used an unauthorized electrical device from [Officer Trout's] vehicle which they attached to my cell door and shocked me six times in about an hour." On another date in May 2023, Sergeant Mayes allegedly sprayed him in the eyes and face with pepper spray for no reason. He claims he was later taken to the restrictive housing unit and found a package of methamphetamine, which he turned over to correctional staff. A subsequent search revealed "large quantities of drugs hidden in supply rooms and laundry." He claims Sergeant Heater told gang members that he

caused the confiscation of their drug stash, which has resulted in numerous threats against him.

He further claims that he had a prior knee injury and has been given "knee sleeves" by a doctor, but Lieutenant Sowerds (first name unknown) will not let him have the sleeves, which are being held in the property room. He claims that on another date, he was held in a "strip cell" for a week. He was without his tablet for some period, and he claims when he got it back it had been tampered with, because when he called his family and his attorney, he could hear them talking but they could not hear him.

In June 2023, he claims to have found more drugs, which he turned into Sergeant Hardy and Lieutenant Lucky (first name unknown). He was later found guilty of possession of a controlled substance and sent to administrative segregation. In September 2023, he claims he was assaulted by two inmates in that unit, one of whom threw urine on him and the other spit on him. He claims he reported the incident but "nothing was done." He claims that he has received "threats of death/great bodily harm daily" from other inmates in the administrative segregation unit because they view him as a snitch. He also claims that on the same day he was assaulted, he slipped in the shower and injured his finger. He claims he put in medical requests and was seen by a nurse, but she allegedly did not provide him with proper care.

Based on these events, he seeks monetary damages and various forms of injunctive relief. Among other things, he requests to be moved to another facility for security reasons, and to be placed in protective custody until the move is executed.

Mr. Greenlee again asserts unrelated claims pertaining to his personal property, medical issues, incidents of excessive force, and harm posed to him by other inmates. *George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007). The mere fact that all of his claims arise from events occurring at an IDOC facility does not mean they can be lumped together in one lawsuit. *See Owens v. Evans*, 878 F.3d 559, 566 (7th Cir. 2017) (observing that prisoner-plaintiff's "scattershot strategy" of filing an "an omnibus complaint against unrelated defendants . . . is unacceptable").

Ordinarily, when a plaintiff files a complaint asserting unrelated claims against unrelated defendants, my preference is to allow him an opportunity to pick which related claims he wants to pursue. Here, however, Mr. Greenlee was already given an opportunity to choose, and he again asserted unrelated claims pertaining to a variety of issues. Additionally, he claims to have a pressing need for protection from other inmates. Therefore, I will proceed to screen his failure-to-protect allegations and will dismiss his other claims without prejudice.[1] If he wishes to pursue these unrelated claims, he must do so in a separate lawsuit (or lawsuits), subject to the usual constraints of the Prison Litigation Reform Act.

The Eighth Amendment imposes a duty on prison officials to "protect prisoners from violence at the hands of other prisoners." *Farmer v. Brennan*, 511 U.S. 825, 832-33

---

[1] With all due respect to Mr. Greenlee, I think it is fair to describe some of his allegations as "fantastic" or even "delusional." *See Neitzke v. Williams*, 490 U.S. 319, 328 (1989); *Gladney v. Pendleton Corr. Facility*, 302 F.3d 773, 774 (7th Cir. 2002). This includes his allegation that the Warden has conspired to kill him. Nevertheless, I read the complaint liberally to allege that he is in danger from other inmates and that prison staff are not taking adequate steps to protect him. I offer no opinion about the merit of any of the unrelated claims contained in the amended complaint.

4

(1994). However, "prisons are dangerous places," as "[i]nmates get there by violent acts, and many prisoners have a propensity to commit more." *Grieveson v. Anderson*, 538 F.3d 763, 777 (7th Cir. 2008). Therefore, a failure-to-protect claim cannot be predicated "merely on knowledge of general risks of violence in a detention facility." *Brown v. Budz*, 398 F.3d 904, 913 (7th Cir. 2005). Instead, the plaintiff must allege that "the defendant had actual knowledge of an impending harm easily preventable, so that a conscious, culpable refusal to prevent the harm can be inferred from the defendant's failure to prevent it." *Santiago v. Wells*, 599 F.3d 749, 756 (7th Cir. 2010). This is a high standard. To be held liable, a defendant must have "acted with the equivalent of criminal recklessness, in this context meaning they were actually aware of a substantial harm to [plaintiff's] health or safety yet failed to take appropriate steps to protect him from the specific danger." *Klebanowski v. Sheahan*, 540 F.3d 633, 639-40 (7th Cir. 2008).

Giving Mr. Greenlee the inferences to which he is entitled, he has alleged a plausible Eighth Amendment claim against defendants Dwyer and Heater. He claims that he has twice requested protective custody from Dwyer due to specific threats made by gang members, who view him as a snitch, but his requests have been denied. He further claims that Heater told other inmates that he was the one who had caused their drug stash to be confiscated, exposing him to harm. He claims that one inmate put drugs in his food, and two other inmates assaulted him with bodily waste. He will be permitted to proceed on a claim for damages against these defendants.

He also claims to need protection from other inmates. The Warden has both the authority and the responsibility to ensure that inmates at his facility are protected from

harm posed by other inmates as required by the Eighth Amendment. *See Gonzalez v. Feinerman*, 663 F.3d 311, 315 (7th Cir. 2011). Therefore, he will be allowed to proceed on an Eighth Amendment claim against the Warden in his official capacity for injunctive relief related to his need for protection from other inmates. He also requests a transfer to another facility, alleging that he is not truly safe anywhere at MCF because he is viewed as a snitch by other inmates there. Because it appears that IDOC Commissioner Christine Reagle would be the official responsible for effectuating his transfer to another facility, he will be permitted to proceed against her in her official capacity for injunctive relief.

His amended complaint can also be read to seek a preliminary injunction requiring that he be placed in protective custody and/or transferred while this case is pending. "[A] preliminary injunction is an extraordinary and drastic remedy, one that should not be granted unless the movant, *by a clear showing*, carries the burden of persuasion." *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997). "A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008).

On the first prong, "the applicant need not show that [he] definitely will win the case." *Illinois Republican Party v. Pritzker*, 973 F.3d 760, 763 (7th Cir. 2020). However, "a mere possibility of success is not enough." *Id.* at 762. "A strong showing . . . normally includes a demonstration of how the applicant proposes to prove the key elements of its

case." *Id*. at 763 (quotation marks omitted). In assessing the merits, I do not simply "accept [the plaintiff's] allegations as true, nor do [I] give him the benefit of all reasonable inferences in his favor, as would be the case in evaluating a motion to dismiss on the pleadings." *Doe v. Univ. of S. Indiana*, 43 F.4th 784, 791 (7th Cir. 2022). Instead, I must assess the merits as "they are likely to be decided after more complete discovery and litigation." *Id.*

On the second prong, "[i]ssuing a preliminary injunction based only on a possibility of irreparable harm is inconsistent with . . . injunctive relief as an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter*, 555 U.S. at 22. What's more, "mandatory preliminary injunctions" requiring the defendant to take affirmative acts are viewed with particular caution and should be "sparingly issued[.]" *Mays v. Dart*, 974 F.3d 810, 818 (7th Cir. 2020) (quotation marks omitted).

Additionally, in the prison context, my ability to grant injunctive relief is significantly limited. Any remedial injunctive relief "must be narrowly drawn, extend no further than necessary to remedy the constitutional violation, and use the least intrusive means to correct the violation of the federal right." *Westefer v. Neal*, 682 F.3d 679, 681 (7th Cir. 2012) (citations and internal quotation marks omitted). I also must consider that "[p]rison administrators . . . should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security." *Bell v. Wolfish*, 441 U.S. 520, 547 (1979). Prisoners do not have a constitutional right to the

7

housing assignment of their choosing, and where best to house a prisoner is ordinarily a matter committed to the discretion of prison officials. *See Meachum v. Fano*, 427 U.S. 215, 224 (1976); *Antonelli v. Sheahan*, 81 F.3d 1422, 1431 (7th Cir. 1996).

At present, I only have Mr. Greenlee's account of the risk posed to him at MCF. In light of the deference owed to prison officials in the management of their facilities and the limitations on granting injunctive relief in the correctional setting, I will order the Warden to respond before taking further action on his request for preliminary injunctive relief.

ACCORDINGLY, the court:

(1) GRANTS the plaintiff leave to proceed against Unit Team Manager Dwyer (first name unknown) and Sergeant Heater (first name unknown) in their personal capacity for money damages for failing to protect him from other inmates in violation of the Eighth Amendment;

(2) GRANTS the plaintiff leave to proceed against the Warden of Miami Correctional Facility in his official capacity for injunctive relief related to his ongoing need for protection from other inmates;

(3) GRANTS the plaintiff leave to proceed against the IDOC Commissioner in her official capacity for injunctive relief related to his ongoing need for a transfer to another facility for security reasons;

(4) DISMISSES WITHOUT PREJUDICE the plaintiff's claims against Lieutenant Lucky, Lieutenant Sowerds, Major of Custody, Sergeant Hardy, and Sergeant Mayes;

(5) DISMISSES all other claims;

(6) DIRECTS the clerk to separately docket the amended complaint (ECF 11) as a motion for a preliminary injunction;

(7) DIRECTS the clerk to request a Waiver of Service from (and if necessary, the United States Marshals Service to use any lawful means to locate and serve process on) the Warden of Miami Correctional Facility by email to the Indiana Department of Correction with a copy of this order and the amended complaint (ECF 11) pursuant to 28 U.S.C. § 1915(d);

(8) DIRECTS the clerk to fax or email a copy of the same documents to the Warden of Miami Correctional Facility at Miami Correctional Facility;

(9) DIRECTS the clerk to request a Waiver of Service from (and if necessary, the United States Marshals Service to use any lawful means to locate and serve process on) IDOC Commissioner Christina Reagle, Unit Team Manager Dwyer (first name unknown), and Sergeant Heater (first name unknown) at the Indiana Department of Correction and to send them a copy of this order and the amended complaint (ECF 11) pursuant to 28 U.S.C. § 1915(d);

(10) ORDERS the Indiana Department of Correction to provide the United States Marshal Service with the full name, date of birth, and last known home address of any defendant who does not waive service, to the extent such information is available;

(11) ORDERS the Warden to file and serve a response to the plaintiff's motion for a preliminary injunction no later than **December 15, 2023**, with supporting documentation and declarations from staff as necessary, addressing his current need for protection from other inmates and the steps being taken to protect him from harm; and

(12) ORDERS the Warden, Commissioner Reagle, Unit Team Manager Dwyer, and Sergeant Heater to respond, as provided for in the Federal Rules of Civil Procedure and N.D. Ind. L.R. 10-1(b), only to the claims for which the plaintiff has been granted leave to proceed in this screening order.

SO ORDERED on November 20, 2023.

/s/ Philip P. Simon
JUDGE
UNITED STATES DISTRICT COURT